**E-FILED**
Wednesday, 14 October, 2015  04:39:16 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-30006** |
| | ) | |
| **MARCUS FIFER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Marcus Fifer's Motion to Suppress Evidence (d/e 32). Because there was probable cause to search the Defendant's apartment and the Defendant's electronic devices, the Motion to Suppress Evidence is denied.

## I. BACKGROUND

The Defendant, Marcus Fifer, has been charged with sexual exploitation of a minor and possession of child pornography. These charges arose out of a police investigation of the Defendant for heroin distribution that began in November 2013. On November 6,

2013, Officers James Wangard and Grant Barksdale of the Springfield Police Department worked with a confidential source (CS) to conduct a controlled buy of heroin from the Defendant. The officers directed the CS to call the Defendant, who indicated that he had drugs available to sell to the CS. The officers then drove with the CS to the Defendant's residence. Before sending the CS into the Defendant's apartment to purchase drugs, the officers searched the CS to make sure that he did not already have any drugs in his possession. The officers then gave the CS $50 to purchase heroin from the Defendant. The officers parked approximately 50 feet from the Defendant's front door and watched the CS approach the door. Although the officers could not see the CS physically enter the apartment, the officers observed as the CS turned down the exclusive entryway to the Defendant's apartment and re-emerged about one minute later.

The CS returned to the officers' car with three bindles of heroin. The officers searched him again for contraband and the $50. The CS reported that he exchanged the $50 for the three bindles of heroin, which, when weighed including the packaging,

amounted to about one gram.  He also identified a photo of the Defendant as the person from whom he purchased the drugs.

The searches of the CS before and after the purchase consisted of the same procedure: the CS's coat and outer clothing were searched, his body was patted down, pockets were turned out, the waistband of his pants was pulled away from his body so that any loose objects fell, and his shoes and socks were searched with Officer Wangard's finger both around the feet and between the feet and the shoes.  The search did not include a full strip search nor a body cavity search.

Officers Wangard and Barksdale conducted another of these controlled buys on November 13, 2013.  The officers worked with the same CS, who this time exchanged $50 for two bindles of heroin, which, when weighed, including the packaging, amounted to about one-third of a gram.  The CS again identified a photo of the Defendant as the individual who sold him the heroin.  The controlled buy process was identical to that of November 6, 2013.

Based on these controlled buys, Officer Wangard applied for a search warrant for the Defendant's apartment on November 15,

2013.  The affidavit accompanying the warrant application included information on a "light skinned black male named Marcus" who was selling heroin, obtained by the officer from the CS along with "multiple" other sources, as well as descriptions of the two controlled buys and cited information Officer Wangard has gained in his experience as an investigator in reference to the list of items to be seized.  On the strength of the affidavit, Judge April Troemper of the Sangamon County Circuit Court approved a warrant to search the Defendant's apartment.  The warrant authorized the seizure of drugs, weapons, "drug paraphernalia and records, financial records, . . . gang records and paraphernalia, cellular phones, pagers, [and] computers."

The CS was working in exchange for consideration on a manufacture and delivery of a controlled substance charge and has limited additional criminal history. At the hearing, Officer Barksdale testified that the CS has engaged in controlled buys on behalf of the Springfield police department "a few times before". Information about the consideration and criminal history was included in the Affidavit, but information about the prior controlled buys with the

Springfield police department was not included.

On November 18, 2013, officers executed the warrant at the Defendant's apartment.  An Emergency Response Team from the Springfield Police Department performed a "knock and announce," breaching the door to the Defendant's apartment after the knock went unanswered. On the initial entry into the apartment, the officers found the Defendant at home.  On the "back sweep" of the apartment, officers discovered a young woman wearing only lower underwear hidden under the bed in the bedroom of the apartment. After she refused to come out from beneath the bed, a female officer removed her, handcuffed her, covered her with a shirt, and escorted her to a sofa in the living room.  The officers were originally given misleading information from the young woman as to her identity, which they were unable to confirm. Eventually, through the efforts of officers on scene and dispatch, the young woman was identified as a 16-year-old girl named C.T.

Officers seized four cellular phones and a tablet from the apartment pursuant to the warrant. While attempting to identify C.T., lead investigator Sergeant Lawson found nude photos of C.T.

and a video showing C.T. involved in a sex act with the Defendant on a tablet seized from the apartment.  He also found additional nude photos of the Defendant and C.T. on one of the four seized cellular phones, as well as images of drugs and money.  Officers also seized 3 digital scales, 61 bindles of heroin, 12.2 grams of marijuana, $821 in U.S. currency, and a laptop computer.

Later in the day, a specialized sex crimes agent, Detective Shane Overby, conducted an interview with C.T. at the station. Sergeant Lawson testified that the discovery of C.T. being underage in a state of undress, and cohabitating with a registered sex offender, along with her lack of cooperation with the officers was enough information for protocol to require him to refer C.T. to specialized agents for an interview investigating a potential sex crime.  In this interview, C.T. verified her age, that she and the Defendant had engaged in a sexual relationship for several months, that they had recorded their sex acts approximately ten times, that the Defendant had photographed her nude, and that she hid under the Defendant's bed to protect the Defendant, because she was a minor and the Defendant was a sex offender.  Detective Overby

testified that the questions he asked in regard to C.T.'s relationship with the Defendant and the digital recording of sexual acts were standard questions that he would ask in any interview of this nature.

On the information gained from this interview, Investigator Ellen Price procured a federal search warrant to search the Defendant's phones, laptop and tablet.  In her affidavit in support of the warrant application, Investigator Price included only information gained from Detective Overby's interview of C.T. Although Investigator Price was aware that illicit images of the Defendant and C.T. were discovered on the tablet and one of the cellular phones at the scene of the initial search, this information was not included in the affidavit.  After securing a warrant for the electronic devices, Agents performed a search and found additional nude pictures and sexually illicit videos of C.T. and the Defendant on the devices.

On April 3, 2015, the Defendant filed a motion to suppress the evidence that the officers found on the Defendant's electronic devices.  Mot. to Suppress Evidence, d/e 32.  The Defendant argues

that the officers did not have probable cause to seize the devices and that the warrant did not authorize the "on-scene search" of the devices.  The Court held a suppression hearing on June 10, 2015. The Court then gave the parties opportunity for briefing of closing arguments, specifically asking parties to respond to two questions: (1) How does the theoretical possibility that someone could have been hiding at the base of the stairs outside the Defendant's apartment or that the CS was hiding drugs in a body cavity affect whether the controlled buys created probable cause to search Fifer's apartment?; and (2) Why would a separate warrant be needed to search an object which officers have a warrant to seize?

The parties submitted simultaneous briefs on these issues on July 22, 2015, and Defendant's Motion to Suppress is now ripe for review.

## II.  **LEGAL STANDARDS**

Officers have probable cause to conduct a search if "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  Ornelas v. United States, 517 U.S. 690, 696

(1996).  "This common-sense, non-technical determination is based not on individual facts in isolation but on the totality of the circumstances known at the time a warrant is requested."  United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010).  Officers only need to have a "reasonable probability" of uncovering evidence of a crime, not an "absolute certainty" or a "preponderance of the evidence."  Id.  Additionally, probable cause "'does not require direct evidence linking a crime to a particular place,'" and "reasonable inferences are permitted."  United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir. 2007) (quoting United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006)).  Thus, the "scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'"  Maryland v. Garrison, 480 U.S. 79, 85 (1987) (quoting United States v. Ross, 456 U.S. 798, 824 (1982)).

### III.  ANALYSIS

The Defendant advances two theories for suppressing the evidence recovered on the Defendant's electronic devices.  First, the Defendant argues that the search warrant was invalid because it

was not supported by probable cause, which would mean that officers never should have recovered the Defendant's electronic devices at all.  Second, the Defendant argues that even if the search of the Defendant's apartment was valid, officers did not have probable cause to conduct the on-site search of the Defendant's electronic devices, where they discovered the images that resulted in the Government further investigating and indicting the Defendant.

## A.   The Search of the Defendant's Apartment Does not Warrant Suppression of Evidence.

The Defendant argues that the evidence should be suppressed because the controlled buys conducted by Officer Wangard did not provide probable cause to search the Defendant's apartment.  The Court finds that the affidavit, including information on the controlled buys, provided sufficient cause to search the Defendant's apartment.  Furthermore, even if the controlled buys were in some way deficient, the evidence recovered as a result of the search falls under the good-faith exception and should not be suppressed.

### 1. The Search Warrant Was Supported by Probable Cause.

Page 10 of 31

The Defendant argues that the search warrant was invalid because Officer Wangard did not disclose in his affidavit that he could not see the CS in the alcove at the base of the stairs outside of the Defendant's apartment and that he did not conduct a body cavity search of the CS for drugs.  The Defendant further argues that because Officer Wangard did not disclose these facts, Officer Wangard misrepresented the circumstances of the controlled buys in the affidavit that he submitted in support of his request for a search warrant, meaning that Judge Troemper relied on misinformation in granting the search warrant.  The Court finds that the information in the affidavit was sufficient to provide probable cause for a search of the Defendant's apartment.

The Defendant argues that if a controlled buy does not include a cavity search of a CS before and after the CS approaches a location to purchase drugs, the controlled buy is flawed.  The Defendant's argument about not being able to see the CS at the door of the Defendant's apartment takes a backseat to his search argument, as under the Defendant's reasoning, unless officers are

able to see the CS throughout the entirety of the controlled buy,
there remains a possibility that the CS bought or stashed a
controlled substance somewhere else out of sight.  The Defendant
cites no cases for the proposition that controlled buys need to be so
strenuously regulated to provide probable cause.

Arguments similar to those advanced by the Defendant have
been rejected by courts before.  In United States v. Sidwell, 440
F.3d 865, 869 (7th Cir. 2006), the Seventh Circuit analyzed a
controlled buy in which officers only saw their confidential source
enter the defendant's apartment building, not the defendant's
individual apartment unit, before conducting the controlled buy.
The defendant argued that "the informant could have purchased the
cocaine from any person in any unit in that building."  Id.  While
the court acknowledged that such a "scenario [wa]s theoretically
possible," the court held that the controlled buy nonetheless gave
rise to probable cause because "[p]robable cause requires only a
probability or substantial chance that evidence may be found; it
does not, by contrast, require absolute certainty."  Id.  The court did
note that the confidential informant had performed reliable buys in

the past—something that Officer Wangard did not testify to regarding his CS—but Officer Wangard's CS also performed two controlled buys, not just one.  Furthermore, the possibility that Officer Wangard's CS purchased drugs from a third party is an even more far-fetched possibility than it was in Sidwell, as the confidential informant in Sidwell could have gone to any unit within an entire apartment building, while Officer Wangard's CS would have had to purchase drugs from a person hiding at the base of the stairwell outside of the Defendant's apartment, with Officer Wangard seated in his car nearby, or had previously arranged to have drugs stashed somewhere in the area,  and retrieved it out of view of the officers.

Additionally, similar arguments to those made by the Defendant were rejected by the First Circuit in United States v. Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993).  In Garcia, the defendant argued that "the informant [who made the controlled buy] might have stashed cocaine elsewhere in the building out of the sight of the detective." Id. at 1167.  The court reasoned that "[a]lthough defendant's argument is possible, it is not probable and

strains credulity on a common-sense reading."  Id.

   As in Sidwell and Garcia, given that the CS twice went down the stairs toward the Defendant's apartment and came back with heroin both times, there is at least a "reasonable probability" that the CS purchased the drugs from the Defendant.  The chance that the CS got the drugs from a third party who was hiding in the alcove at the bottom of the stairs outside the Defendant's apartment or produced the drugs from an orifice—on two occasions—is a mere "theoretical[] possib[ility]" that does not negate the probable cause that arose from the controlled buys.  See Sidwell, 440 F.3d at 869. Because this factual scenario supports probable cause, it is immaterial that Judge Troemper did not know that Officer Wangard could not see the CS outside the Defendant's apartment and did not conduct a cavity search of the CS.  Even if Officer Wangard's affidavit had stated that "[t]he CS was kept under constant surveillance [until he reached the alcove at the base of the stairs outside Fifer's apartment] and [likely] did not have contact with anyone except at 2510 W. Jefferson Apartment 5," Judge Troemper still could have found that probable cause existed to search the

Defendant's apartment.

The cases cited by the Defendant are not on point, as they involve deriving probable cause from information provided by a confidential source only, rather than controlled buys. See United States v. Bell, 585 F.3d 1045, 1051 (7th Cir. 2009) (holding an affidavit including only information from "a few unreliable informants" did not support probable cause."); United States v. Hansmeier, 38 F. Supp3d 950 (C.D. Ill. 2014) (holding that factors supported the reliability of the Confidential Informant and so the finding of probable cause was proper). See also United States v. Leon, 468 U.S. 897 (1984) (involving affidavit referring only to informants, not to controlled buys);United States v. Peck, 317 F.3d 754 (7th Cir. 2003) (same); United States v. Sims, 551 F.3d 640 (7th Cir. 2008) (same); United States v. Koerth, 312 F.3d 862 (7th Cir. 2002) (same); United States v. Brack, 188 F.3d 748 (7th Cir. 2002) (same).  If an officer is not able to participate in an informant's interactions with a defendant, logically, that informant must be able to provide more information about those interactions in order for them to form the basis of probable cause to search that

defendant.  Through the controlled buys, however, Officer Wangard was able to confirm that the CS knew where the Defendant lived, that he could recognize the Defendant in a photo lineup, and that he emerged from a stairwell leading to the Defendant's apartment with bindles of heroin.  The Court finds that the controlled buys were sufficient to provide probable cause to search the Defendant's apartment.

The Defendant further argues in his closing argument that something was "amiss" with the controlled buys due to the variance in weight of the bindles of heroin returned to Officers in each of the $50 buys.  The three bindles returned in the first controlled buy weighed approximately one gram, whereas the two bindles returned in the second controlled buy weighed approximately 1/3 of a gram. Defendant questions whether the price of heroin can change so much in a single week, but ignores information in both the affidavit and the testimony of Officer Wangard that the approximate weight included not only the heroin but the packaging. The packaging, referred to as a "bindle," was described by Officer Wangard as a piece of aluminum foil that was folded into a small rectangle.

Neither party has presented evidence of the actual weight of the heroin that was purchased so the Court cannot conclude that probable cause is compromised due to this variance.  See United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010) ("[C]ircumstances need only indicate a reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary.")

### 2. Even If the Search Warrant Was not Supported by Probable Cause, the Search Falls under the Good Faith Exception to the Exclusionary Rule.

Furthermore, even if the Court were to find that the controlled buys were flawed, the evidence would not be suppressed because it falls under the good faith exception. "The fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith." U.S. v. Orozoco, 576 F.3d 745, 750 (7th Cir. 2009) (quoting United States v.Leon, 468 U.S. 897, 922 (1984)).  If an officer applies for and "obtain[s] a warrant" the Court recognizes this action as "*prima facie* evidence of good faith."  United States v. Peck, 317 F.3d 754, 757 (7th Cir.

2003).

The Defendant appropriately points out four circumstances identified by the Supreme Court in <u>Leon</u> that would rebut this *prima facie* case: "(1) the magistrate has been knowingly misled; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Memorandum in Support of Defendant's Mot. to Suppress Evidence d/e 32, at 8. (internal citation omitted). Although the Defendant's statement on the law is accurate, his application of the facts is deficient. The Defendant argues that the judge "merely acted as a rubber stamp," because the affidavit did not specifically address the need to seize electronic devices. <u>Id.</u>  Courts in this circuit have refrained from drawing such a conclusion in the absence of "evidence detailing the impropriety or inadequacy of the warrant application proceedings as well as the interaction (or lack thereof) between the judge and the officers."  <u>Koerth</u>, 312 F.3d at 869.  This Court likewise refrains from such a finding in the absence of further

evidence of impropriety, beyond mere speculation.

The Defendant further argues in his closing argument that the good faith exception should not apply because Officer Wangard was "dishonest or reckless in preparing the affidavit."  As this Court has already noted, the omitted details that the "search" of the CS did not include a strip-down and cavity search and that the CS surveillance ended part of the way down the stairs to the door, rather than at the door itself were negligible in their effect on the probable cause decision.  Officer Wangard's omission of these specifics does not rise to the dishonesty or recklessness required to defeat the good faith exception.  Even if, against the opinion of this Court, the controlled buys performed by the CS and Officers were found compromised to some extent by the omissions noted by the Defendant, the information provided to Judge Troemper in the affidavit comprised far more than "indicia" of probable cause, and the determination by Judge Troemper and subsequent reliance by Officer Wangard were well within reason.  Therefore, even without a finding of probable cause, the evidence would not be suppressed due to the good faith exception.

**B.  The On-Site Search of the Defendant's Electronic Devices Does not Warrant Suppression of Evidence.**

The Court finds that the search warrant properly encompassed the search and seizure of the Defendant's electronic devices.  Probable cause existed for the initial search of the electronic devices by Sergeant Lawson in the Defendant's apartment.  Even if probable cause had not existed for the initial search and seizure of the electronic devices, the search and seizure was necessary because of exigent circumstances.  Further, the evidence was discovered through an independent source or alternatively would have inevitably been discovered.  Therefore, the evidence discovered on the Defendant's electronic devices will not be suppressed.

**1.  The Search of the Electronic Devices in the Defendant's Apartment Was Supported by Probable Cause.**

The search and seizure of the electronic devices were supported by probable cause.  Even though the affidavit of Officer Wangard did not explicitly make the connection between the alleged

offense in question and the authority given in the warrant to seize computers and cellular phones, the officers' warrant to search the Defendant's apartment was supported by probable cause given the officers' knowledge of the Defendant's drug sales to the CS. The affidavit is only required to provide enough information to allow the magistrate to make a "common-sense decision" that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gates, 462 U.S. 213, 238 (1983). This requirement is referred to in a neighboring circuit as creating a "nexus" between the investigation and the place to be searched. See United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015) (quoting Ellison v. Ballinski, 625 F.3d 953, 958 (6th Cir. 2010) ("[T]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched."). Officer Wangard's affidavit states that the CS's contact with the Defendant was conducted by phone and that the Officer's experience was that financial records and residency documents are commonly found in these investigations. Thus, the

Officer gave the Judge enough information to create that "nexus" between what was to be seized and the electronic devices that were searched.

Hence, the same probable cause that justified a search of the Defendant's home for drugs, also justified a search and seizure of the Defendant's electronic devices, as "it is common for persons involved in drug transactions to maintain records of such transactions and it is common to include in drug investigation search warrants a request to seize documents and records of drug trafficking or transactions." United States v. Asad, 739 F. Supp. 2d 1127, 1138-39 (C.D. Ill. 2010); see also United States v. Orozco, 576 F.3d 745, 748-49 (7th Cir. 2009) (upholding a search of a high-ranking gang member's home for records of narcotics activity based on the investigating officer's personal experience that high-ranking members of gangs often kept such records).  The affidavit and complaint for warrant specifically noted the desire and justification for seizing such "records". Cellular phones and computers are places where such records can be found.

Further, the Defendant has asserted that a separate warrant

from the warrant used to *seize* the Defendant's electronic devices is needed to *search* those items.  The Defendant cites <u>Riley v. California</u>, ___ U.S. ___, 134 S. Ct. 2473 (2014), in support of his argument, but that case is inapposite.  <u>Riley</u> held that the on-scene warrantless search of cell phones was prohibited as part of a search incident to arrest (barring exigent circumstances), but the search in this case was not incident to arrest.  The officers had a warrant for the seizure of the Defendant's electronic devices.  The Defendant here seems to focus on the semantics of using the term "seizure" as opposed to "search."  The specific language of the warrant used by the officers in this case listed the Defendant's apartment as the place to be *searched* and the Defendant's electronic devices (among other items) as the objects to be *seized*.  The warrant did not expressly state that officers were permitted to search the objects that they were authorized to seize.  However, the very purpose of such a warrant is to allow the government to search for evidence and it seems self-evident that the warrant authorized the seizure of certain items so that those items could be searched for evidence.

Given that the warrant authorized officers to seize the

electronic devices, the Court cannot find any justification for why officers would not be permitted to conduct an "on-scene" search of the items.  Indeed, the authorities appear to support the opposite conclusion.  The majority of cases in this area focus on whether officers are authorized to conduct later off-site searches of seized electronic devices as an additional investigatory right beyond the impliedly authorized on-scene search of the seized devices.  See, e.g., United States v. Summage, 481 F.3d 1075, 1079-80 (8th Cir. 2007) ("As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain [electronic] items."); In re Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc., 33 F. Supp. 3d 386, 392 (S.D.N.Y. 2014), as amended (Aug. 7, 2014) ("In the case of electronic evidence, which typically consists of enormous amounts of undifferentiated information and documents, courts have recognized that a search for documents or files responsive to a warrant cannot possibly be accomplished during an on-site search."); United States v. Tylman, No. 06-20023, 2007 WL

2669567, at *13 (C.D. Ill. Aug. 22, 2007) (reasoning that requiring officers to conduct an on-site search of computers "would simply not be practical and would almost certainly be more intrusive to the privacy of the computer owners" than an off-site search); In re Search of 3817 W. W. End, First Floor Chicago, Illinois 60621, 321 F. Supp. 2d 953, 958 (N.D. Ill. 2004) ("First, it is frequently the case with computers that the normal sequence of 'search' and then selective 'seizure' is turned on its head.  Because of the difficulties of conducting an on-site search of computers, the government frequently seeks (and, as here, obtains), authority to seize computers without any prior review of their contents."); United States v. Hunter, 13 F. Supp. 2d 574, 584 (D. Vt. 1998) ("[U]ntil technology and law enforcement expertise render on-site computer records searching both possible and practical, wholesale seizures, if adequately safeguarded, must occur.").  Furthermore, the language and history of Federal Rule of Criminal Procedure 41 implies that an on-scene search of seized electronics is authorized and that Rule 41 was needed to specifically address the "later review" of the electronics.  See Fed. R. Crim. P. 41(e) (2) (B) ("A warrant under

Rule 41(e) (2) (A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant."); Fed. R. Crim. P. 41 2009 advisory committee's notes ("Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location.").

Therefore by the same reasoning espoused earlier in Part (1) (A), this court finds that the on-site search of the Defendant's cellular phone and tablet were supported by probable cause, and thus were the fruits of a properly executed warrant.

### 2. Even if the Search of the Electronic Devices in the Defendant's Apartment Had Not Been Supported by Probable Cause, Exigent Circumstances Necessitated the Search and Seizure of the Electronic Devices.

Even if probable cause to search the electronic devices had not existed, the search and seizure of the electronic devices was a legal

warrantless search incident to arrest because exigent

circumstances necessitated the search and seizure of the devices.

In Riley, the Supreme Court held that a warrant is required before

searching digital information on an arrestee's cell phone.  134 S. Ct.

2473.  However, the Court recognized that a warrantless search

could still be reasonable when supported by exigent circumstances.

Id. at 2494.  Among the potentially exigent circumstances noted by

the Supreme Court was the need to protect the public.  Id.

        When Sergeant Lawson made contact with C.T., she was a

minor, mostly nude, and hiding under a bed in the bedroom of a

sex offender.  Further, she did not cooperate in the officer's attempt

to identify her.  The Government had a compelling interest in

identifying C.T. for her protection because of concerns about the

nature of her relationship with the Defendant, how she came to be

in the apartment, whether she was being held in the apartment

against her will, and whether her parent(s)/guardian knew where

she was.  See also, Hunsberger v. Wood, 570 F.3d 546, 556-57 (4th

Cir. 2009)(holding that the additional intrusion of bringing a

missing girl's step-father inside a home during a warrantless search

was reasonable for the purpose of identifying the girl).  In light of

the totality of the circumstances, it was reasonable for Sergeant

Lawson to immediately search the electronic devices in the room

where C.T. was found for the purpose of identifying her.

> **3.  Even if the Search of the Electronic Devices in the Defendant's Apartment Was an Illegal Search, the Evidence Recovered from the Devices Is Admissible Under the Independent Source Doctrine and the Inevitable Discovery Doctrine.**

Even if the search of the Defendant's electronic devices in his

apartment was illegal, the evidence should not be suppressed,

because the evidence was discovered through an independent

source.  See Murray v. United States, 487 U.S. 533, 537-38 (1988)

(holding that evidence initially seized through an illegal search

should not be suppressed if that evidence is later seized through an

independent, legal search).  Officers later obtained a warrant to

search the Defendant's seized electronic devices for evidence related

to a potential sexual crime.  This later warrant was also supported

by independent probable cause.

By the Independent Source Doctrine, evidence is admissible if

(1) officers' decision to seek a warrant is not dependent on the

results of an illegal search, and (2) the neutral magistrate who

issues the warrant is unaware of the earlier illegal search.  United

States v. May, 214 F.3d 900, 906 (7th Cir. 2000).  The Government

did not rely upon the already discovered images in its affidavit

arguing probable cause for the additional federal warrant.

Therefore, the evidence recovered pursuant to the federal warrant is

not suppressible "fruit of the poisonous tree".  The discovery of C.T.,

a minor, dressed only in lower underwear and hiding under the bed

of a known registered sex offender triggered officers to refer her to a

specialized agent for an interview pursuant to a sex crime

investigation.  In the course of that interview, C.T. told officers that

the Defendant had filmed her and the Defendant performing sexual

acts.  The information gained in this interview alone, and not the

images discovered by Sergeant Lawson on-site, were used in

Investigator Ellen Price's affidavit.  Price's affidavit was then used to

secure the new warrant to search the electronic devices.  Therefore,

regardless of the "on-site" search that was conducted on November

18, 2013, the additional evidence gained from the later federal

warrant was still discovered through an independent source and

must be admitted.

Furthermore, even if the alternative source was not truly independent because the photos and videos found during the on-site search of the Defendant's electronic devices influenced the officers' decision to pursue a second warrant, the evidence found during the initial search, as well as the evidence found pursuant to the later federal warrant, is still admissible under the doctrine of inevitable discovery.  Both doctrines are in place so that investigators do not lose out on the fruits of a legitimate investigation because of earlier missteps.  Nix v. Williams, 467 U.S. 431,443-4 (1984) ("There is a functional similarity between these two doctrines in that exclusion of evidence that would inevitably have been discovered would also put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place.")  Even if it could be argued that the pictures and video discovered by Sergeant Lawson did contribute to the actual decision to refer C.T. to a sex crime investigator for interview, he would have made the same decision if the on-site search had not taken place.  "Exclusion of physical evidence that

Page 30 of 31

would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." Id. at 446.  Therefore, regardless of whether the on-site search was supported by probable cause, all of the evidence taken from the Defendant's electronic devices is admissible.

## IV.  CONCLUSION

For the aforementioned reasons, the Defendant's Motion to Suppress Evidence (d/e 32) is DENIED.

ENTER: October 14, 2015.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE