**E-FILED**
Wednesday, 18 May, 2016  04:53:38 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-30006** |
| | ) | |
| **MARCUS FIFER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is the Defendant's Motion to Set Aside Verdict (d/e 140), the Defendant's Motion for New Trial (d/e 142), the Defendant's Amended Motion for Acquittal (d/e 160), the Defendant's Amended Motion for New Trial (d/e 161), and the parties' briefs on the statutory sentencing range (d/e 171, 172). The Defendant's Amended Motion for Acquittal  (d/e 160) and Amended Motion for New Trial (d/e 161) are DENIED.  The Defendant's Motion to Set Aside Verdict (d/e 140) and Motion for New Trial (d/e 142) are DENIED AS MOOT because they are

duplicative of the amended motions.  Further, the Defendant's objection to the Third Revised Presentence Investigation Report is SUSTAINED.  The Court finds that the Defendant does not qualify for "Mandatory life imprisonment for repeated sex offenses against children" under 18 U.S.C. § 3559(e).

## I.  <u>BACKGROUND</u>

The facts of this case are more fully set out in this Court's prior opinions (d/e 117, 137).  The relevant facts are summarized below:

On February 11, 2014, a three-count Indictment was filed against Defendant Marcus Fifer in this Court.  Count 1 charged that on or between May 1, 2013 and November 18, 2013, the Defendant attempted to use, persuade, induce, entice, and coerce a minor, Minor Victim 1 (a.k.a. "C.T."), to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate commerce.  *See* Indictment (d/e 1).  Count 2 charged that, on or between May 1, 2013 and November 18, 2013, Defendant knowingly possessed at

least one film, video, portable computer media storage device, and other matters which contained any visual depiction that was produced using materials which had been mailed and shipped and transported using means and facility of interstate and foreign commerce, including by computer, the production of such visual depiction involving the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct. *See id.* Count 3 charged that, on or between May 1, 2013 and November 18, 2013, Defendant, being required by federal and state law to register as a sex offender, committed a felony offense involving a minor under 18 U.S.C. § 2251 (a) and (e). *See id.*

On May 9, 2014, the Defendant entered a conditional plea of guilty to Count 1 of the Indictment, pursuant to a written plea agreement. This Court adjudged him guilty of the offenses in Count 1. After the Defendant pled guilty, the U.S. Probation Office prepared an Initial Presentence Investigation Report and a Revised Presentence Investigation Report in preparation for the Defendant's sentencing. *See* (d/e 22, 26). In both reports, the U.S. Probation Office found that the Defendant's statutory sentencing range was

25 to 50 years, under 18 U.S.C. § 2252(e). *See id.* On August 11, 2014, the Defendant appeared before this Court for a sentencing hearing. At the hearing, the Defendant moved to withdraw his guilty plea. The Court granted the Defendant's motion and granted the Defendant's then counsel's motion to withdraw. Defendant was appointed new counsel and a jury trial was set.

On April 3, 2015, the Defendant filed a Motion to Suppress the images and videos found on the Defendant's electronic devices and Detective Overby's interview of C.T. because: (1) there was not adequate probable cause to issue the search warrant authorizing the search of the Defendant's apartment, which led to the discovery of C.T. under the Defendant's bed and the seizure of the Defendant's electronic devices; (2) even if there was probable cause to search the Defendant's apartment, there was no probable cause to seize the Defendant's electronic devices; and (3) even if there was probable cause to seize the Defendant's electronic devices, neither the search warrant nor exigent circumstances permitted the on-scene search of the Defendant's electronic devices, which led to the Federal search warrant issued as to the Defendant's electronic

devices.  *See* Def. Mot. to Suppress (d/e 32).

On May 29, 2015, the Defendant filed a Motion for
Appointment of an Investigator to interview witnesses related to the
Defendant's charges (d/e 38).  On June 10, 2015, the Court held an
evidentiary hearing and a motion hearing on the Defendant's two
pending motions.  At the close of the evidentiary hearing, the Court
asked the parties to file closing arguments on the Defendant's
motion to suppress, including the briefing of two of the Court's
questions.  On June 11, 2015, the Defendant filed a motion for
Leave to File a Supplemental Motion to Suppress, arguing that the
Defendant discovered at the evidentiary hearing that Officer
Wangard made misrepresentations in his affidavit supporting his
application for the search warrant (d/e 45).  On July 8, 2015, in a
written order, the Court denied the Defendant's Motion to Appoint
an Investigator and Defendant's Motion for Leave to File a
Supplemental Motion to Suppress.  *See* Order (d/e 53).  On July 22,
2015, the parties filed their closing arguments concerning the
Defendant's Motion to Suppress.  *See* Def. Brief Closing Argument
(d/e 57); Gov. Response (d/e 58).  On September 23, 2015, the

Defendant filed a Motion for a Separate Trial on Count 3 of the Indictment (eventually Count 24 of the Second Superseding Indictment) (d/e 60).

On September 28, 2015, the Government filed a Notice of Prior Conviction, which advised that, on May 28, 2008, the Defendant pled guilty to Aggravated Sexual Abuse, Champaign County, Illinois, Circuit Court, Docket No.: 2008-CF-112.  *See* (d/e 61). This prior conviction required the Defendant to register as a sex offender, therefore satisfying an element of Count 3 of the Indictment (eventually Count 24 of the Second Superseding Indictment).  In the Notice of Prior Conviction, the Government provided notice that the Defendant's prior conviction serves as a qualifying conviction for both an enhanced sentence under 18 U.S.C. § 2251(e) and as a qualifying conviction for a mandatory life sentence under 18 U.S.C. § 3559(e).  On October 6, 2015, the Government filed a notice to offer F.R.E. 414 evidence of the prior conviction, at trial (d/e 62).

On the same date, a 27-count Superseding Indictment was filed in this Court, charging the Defendant with: 23 counts of

Sexual Exploitation of Children, in violation of 18 U.S.C. §§ 2251(a) and (e) and 3559(e)(1), relating to 23 separate images and videos discovered on the Defendant's electronic devices; three counts of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), citing three separate electronic devices owned by the Defendant; and one count of Penalties for Registered Sex Offenders, in violation of 18 U.S.C. § 2253.  *See* (d/e 65).  On October 9, 2015, the Defendant filed a Motion in Limine to bar evidence of the Defendant's prior conviction for Aggravated Criminal Sex Abuse (d/e 69).  On October 13, 2015, the Government filed a Motion in Limine to bar any evidence of the Defendant's knowledge, or lack thereof, of C.T.'s age (d/e 72).

On October 14, 2015, this Court issued an Opinion denying the Defendant's Motion to Suppress (d/e 77).  At a pretrial conference on October 20, 2015, the Court orally pronounced several rulings, including: (1) denying the Government's motion to introduce Rule 414 evidence, therefore, granting the Defendant's motion in limine to exclude the same evidence; (2) granting the Government's motion in limine to exclude evidence of the

Defendant's knowledge, or lack thereof, of C.T.'s age; and (3)

denying the Defendant's motion to sever the Penalties for Registered

Sex Offenders count.  The Court issued a written opinion on these

rulings on October 23, 2015 (d/e 102).

On October 20, 2015, a 24-count Second Superseding

Indictment was filed in this Court, charging the Defendant only

with the 23 counts of Sexual Exploitation of a Minor and the one

count of Penalties for Registered Sex Offenders.  *See* (d/e 88).  On

October 21, 2015, the Government filed a motion in limine to

exclude the Defendant's exhibits (d/e 89), and on October 22, 2015,

the Government filed a motion in limine to exclude the Defendant's

witnesses (d/e 95).  On October 23, 2015, the Defendant filed a

motion in limine to bar the qualification of the Government's

experts (d/e 101).  On October 26, 2015, the Defendant filed a

motion in limine to bar the Government's experts from testifying as

to ultimate issues for jury determination (d/e 109).  On the same

date, the Government filed a Motion for Reconsideration of the

Court's ruling on F.R.E. 414 evidence (d/e 110).

At a pretrial conference on Monday, October 26, 2015, the

Court orally pronounced several rulings, including: (1) granting the Government's motion to exclude the Defendant's exhibits; (2) granting the Government's motion to exclude the Defendant's witnesses; (3) denying the Defendant's motion to bar the qualification of the Government's experts; (4) granting the Defendant's motion to bar the Government's witnesses from testifying as to ultimate issues for jury determination; and (5) denying the Government's motion for reconsideration of the Court's ruling on F.R.E. 414 evidence.  The Court issued a written Opinion on these rulings on November 9, 2015 (d/e 137).

On October 27, 2015, jury selection was held for the Defendant's jury trial.  During jury selection, the Court denied several motions by the Defendant to strike jurors for cause, including two separate motions to strike juror, Mr. T, for cause. The Defendant used all of his allotted peremptory strikes during jury selection.  The Defendant's jury trial commenced on October 28, 2015.  At trial, the Defendant made multiple objections on the grounds that the Government's expert witnesses had testified to an ultimate issue for jury determination.  The Court overruled the

Defendant's objections but admonished the witnesses and the Government to avoid ultimate issues for jury determination.

On October 29, 2015, after the Defendant testified on direct but prior to the Defendant's cross-examination, the Government re-raised its Motion to Introduce F.R.E. 414 evidence, arguing that the Court should reconsider the motion because the Government required introduction of the evidence to rebut the Defendant's evidence that the alleged pornography was the product of C.T. and the Defendant's loving relationship. *See* Gov. Notice of Intent to Introduce Evidence of Other Acts of Child Molestation (d/e 118). On the morning of October 30, 2015, prior to resuming the Defendant's trial, the Court orally granted the Government's Motion to Introduce F.R.E. 414 evidence. The Court issued a written opinion on this ruling on November 9, 2015 (d/e 138). Additionally, prior to, and during, trial the Court held numerous conferences to discuss jury instructions. The Court ultimately gave the Government's proposed instructions 17A, 39, 45, and 51, over the Defendant's objection. *See* Proposed Jury Instruction Ruled on by Court (d/e 129).

On November 12, 2015, the Defendant filed his Motion to Set Aside the Verdict (d/e 140) and his Motion for a New Trial (d/e 140).  The Court granted the Defendant extensions to file memoranda in support of the motions.  *See* January 25, 2016 Text Order.  On February 5, 2016, the Defendant filed his Amended Motion for Acquittal (d/e 160) and his Amended Motion for New Trial (d/e 161), including the memoranda in support.  The Government filed responses to both motions on February 26, 2016 (d/e 165, 166).

In anticipation of the Defendant's sentencing, the U.S. Probation Office issued its Second, Third, and Fourth Revised Presentence Investigation Reports on January 15, 2016, February 22, 2016, and April 28, 2016.  *See* (d/e 157, 162, 175).  The U.S. Probation Office found, consistent with the Government's notice of prior conviction, that the Defendant's prior conviction for Aggravated Criminal Sexual Abuse serves as a qualifying conviction, pursuant to 18 U.S.C. § 3559(e), and, accordingly, qualifies the Defendant for a mandatory life sentence.  *See id.*

Defendant appeared before this Court on February 29, 2015

for a sentencing hearing.  Prior to the hearing, the Defendant filed a

Motion to Continue the Sentencing Hearing to allow the Court time

to rule on the Defendant's post-trial motions (d/e 167).  At the

hearing, the Court granted the Defendant's Motion to Continue.

Later that same day, the Defendant filed a Second Motion to further

continue the sentencing hearing (d/e 169).  In his motion, the

Defendant stated that, after speaking to the U.S. Probation Office,

the Defendant now objected to his qualification for a mandatory life

sentence under 18 U.S.C. § 3559(e)[1].  The Court granted the

continuance and ordered both parties to brief the issue of whether

the Defendant qualified for a mandatory life sentence.  *See* March 2,

2016 Text Order.  The parties subsequently filed the briefs (d/e

171, 172).

The Court now denies Defendant's post-trial motions for

acquittal and for a new trial.  Further, the Court finds that the

Defendant does not qualify for "Mandatory life imprisonment for

repeated sex offenses against children" under 18 U.S.C. § 3559(e).

---

1 The Defendant does not object to the finding that his prior conviction serves
as a qualifying conviction for an enhanced sentence of 25 to 50 years'
imprisonment under 18 U.S.C. § 2251(e).

## II.  **ANALYSIS**

### A. **The Defendant's Motion for Acquittal is Denied.**

"[A] trial judge should reverse a jury verdict only if, viewing the evidence in the light most favorable to the prosecution, the record contains *no* evidence on which a rational jury could have returned a guilty verdict."  *U.S. v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005) (emphasis added).  Further, the Court "defer[s] to the credibility determination of the jury[ ] and overturn[s] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt."  *U.S. v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014) (internal quotations omitted).

In the Defendant's Motion for Acquittal, he argues that he is entitled to acquittal on five separate grounds: (1) the Government failed to prove that the Defendant engaged in sexual activity with C.T. "for the purpose of" producing pictures and videos of that activity as to all counts of conviction; (2) no rational trier of fact could have concluded that the underlying images in Counts 3, 4, 6, and 15 were lewd and lascivious; (3) the Government failed to prove

Page 13 of 64

that the Defendant "produced" the image identified in Count 3; (4) the Government failed to properly identify C.T. as the person depicted in the pictures and videos introduced at trial; and (5) no rational trier of fact could have convicted the Defendant on Counts 8, 10, or 11 because C.T. admitted to taking the pictures underlying those counts.  The Court finds that none of the Defendant's arguments overcome the Defendant's "nearly insurmountable" burden of proof.  *Torres-Chavez*, 744 F.3d at 993.

### 1. A Rational Jury Could Have Found That the Government Proved Intent Beyond a Reasonable Doubt.

The Defendant first argues that the Government did not prove beyond a reasonable doubt that the Defendant engaged in sexual activity with C.T. "for the purpose of" creating a visual depiction. See 18 U.S.C. § 2251.  Moreover, the Defendant argues that the Government did not dispute the Defendant's evidence that he was not engaging in sexual activity with C.T. for the purpose of producing images because the Defendant would have engaged in sexual activity with C.T. regardless of whether the images were produced.

The Defendant's argument parrots his prior argument in response to the Government's motions in limine to bar the Defendant's exhibits and witnesses, with the addition of the Fourth Circuit case, *U.S. v. Palominos-Coronado*, 805 F.3d 127 (4th Cir. 2015).  Therefore, the Court adopts the facts and findings from its previous opinion dismissing the Defendant's argument and holds that, under *United States v. Vang*, 128 F.3d 1065 (7th Cir. 1997), the "'purpose' element of § 2251 [is] proven by the mere fact that the Defendant personally took a photo of, took a recording of, or engaged in the recorded act along with a minor engaging sexually explicit conduct."  *See* Opinion (d/e 137) at Part II.A.  However, the Court will address *Palominos-Coronado*.

In *Palominos-Coronado*, the Fourth Circuit held that "§ 2251 contains a specific intent element," and, therefore the Government is required to prove that the "production of a visual depiction was a purpose of engaging in the sexually explicit conduct."  805 F.3d at 130.  "[I]t is not sufficient simply to prove that the Defendant purposefully took a picture."  *Id.* at 131.  However, the defendant need not be "single-minded in his purpose."  *Id.*  The court then

listed several ways to prove such specific intent: (1) direct evidence of intent; (2) evidence of the defendant's actions, instructions, and descriptions of the visual depictions produced; (3) the number of sexually explicit depictions; and (4) the equipment used. *Id.* at 131-32. The Government's evidence of intent, in *Palominos-Coronado*, was comprised only of the fact that the defendant regularly used his cell phone camera to "take pictures of all aspects of his life" and the fact that the defendant brought his cell phone downstairs with him before engaging in sexual contact. *Id.* at 133. The court did not find the Government's evidence sufficient and reversed the district court's denial of the defendant's motion for acquittal. The Defendant argues that his own testimony that he would have engaged in sexual contact with C.T. regardless of whether the images were created make this case parallel to *Palominos-Coronado*.

Fourth Circuit cases are persuasive, not binding on this Court. However, even assuming, *arguendo,* that *Palominos-Coronado* binds the Court, the Government still proved intent. In this case, the Government did provide evidence to prove that the Defendant specifically intended to produce a visual depiction of his sexual

conduct.  Although the Government did not present direct evidence of the Defendant's intent, it did provide evidence that fits two of the three categories of circumstantial evidence noted by the Fourth Circuit.  *See id.* at 131.

First, the Government presented evidence of the Defendant's "actions" and "directions".  The Fourth Circuit cites actions like "us[ing] a remote control to zoom the camera in and out" as evidence of intent.  *Id.* at 131.  In the selections of the video recordings presented by the Government, the Defendant is clearly seen changing the angle and position of the recording device.  In fact, in one instance, the Defendant actually stops the sexual activity to reposition the recording device.  This action in positioning the recording device is probative of the Defendant's intent.  Further, the Government, in closing argument, specifically directed the jury's attention to two specific actions in the evidence that proved intent: one instance where, during a video recording of sexual activity, the Defendant stopped having sex with C.T. in order to take a photograph of C.T.'s genitals; and another instance, where the Defendant instructed C.T. to engage in self-stimulation, then

told her to "slow down" because he had not yet properly set up the video recording.  *See* Trial Transcript (d/e 150) at 782-83.

Second, the Defendant produced a significant number of visual depictions of the sexual activity.  In *Palominos-Coronado*, the Court specifically stated, "[w]e find it significant here that only one photograph was taken and subsequently deleted."  *Id.* at 132.  In this case, the Defendant took many videos and photographs with three different electronic devices.  With some of the photographs taken on the Defendant's cell phone, he then transferred the photos from his phone to his computer.  Further, the fact that many of the photos were not produced during intercourse, but were photos of C.T. nude, in different poses of a sexual nature, undermines the Defendant's argument that the visual depictions were incident to his sexual relationship with C.T.

Additionally, even if the Defendant's testimony, taken as true, was dispositive, the jury was not required to find the Defendant credible.  Therefore, the evidence presented by the Government as to the Defendant's intent rises well above the incredibly low bar of "*no* evidence on which a rational jury could have returned a guilty

verdict." *Murphy*, 406 F.3d at 861.

### 2. A Rational Jury Could Have Found the Image Underlying Counts 3, 4, 6, and 15 to Be Lewd and Lascivious.

The Defendant next argues that no rational trier of fact could have found that the underlying images in Counts 3, 4, 6, and 15 are lewd and lascivious. The Defendant makes his argument using the six factors from *U.S. v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal. 1986). These six *Dost* factors are the identical factors that were provided to the jury to aid its determination of whether the images are lewd and lascivious: (1) whether the focal point of the visual depiction is on the child's genitals or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The Defendant argues that the only factor that weighs in favor of the jury's finding of "lewd and lascivious" in Counts 3, 4, 6, and 15 is that C.T. is nude in the photos.  This Court disagrees with the Defendant's analysis.  The photos are posed images of a fully nude, 15-year-old girl, taken in the Defendant's bedroom.  Further, the photos are included in a series of photos that also features very graphic images of the same 15-year-old girl.  The Court finds that a rational trier of fact could clearly find that factors 2 through 6 weigh toward a finding of "lewd and lascivious."

The Defendant further argues that the jury could not reasonably have found the images in Counts 3, 4, 6, and 15 to be lewd and lascivious because the jury did not convict the Defendant on Count 2.  However, the Defendant does not cite any case law to support the premise that inconsistency in the jury's findings on separate counts is sufficient to prove that "no rational trier of fact could have found" the Defendant guilty on an individual count.  Further, this Court finds that a reasonable trier of fact could have additionally found the image in Count 2 lewd and lascivious for the same reasons cited above.

Assuming, *arguendo*, that an inconsistent verdict would merit acquittal, this Court still finds that evidence exists to support the verdict of the jury.  The Defendant misconstrues the photo in Count 2 as "identical" with the photos in Count 3, 4, 6, and 15.  In the Count 2 photo, C.T. is posed standing straight up with one hand on her head.  Although this Court finds the photo in Count 2 to be lewd and lascivious, the pose in the Count 2 photo is clearly the *least* suggestive of the five photos in question.  Therefore, evidence existed to support the finding of the jury.

### 3. A Rational Jury Could Have Found That the Defendant "Produced" the Image in Count 3.

The Defendant next argues that no rational trier of fact could have found the Defendant guilty on Count 3 because the underlying image in Count 3 is a photo that the Defendant transferred from his phone to his laptop (the image originally taken on the Defendant's phone is Count 4).  The Defendant suggests that the jury could not find the transference of an image from one device to another to fit the definition of "producing" given to the jury.  The jury was instructed that "producing" means "producing, directing,

manufacturing, issuing, publishing, or advertising."  In *U.S. v. Angle*, 234 F.3d 326, 341 (7th Cir. 2000), the Seventh Circuit held that the transference of an image from one media device to another was clearly incorporated into the definition of "producing" by the definition's inclusion of the terms "issuing," "publishing," and "advertising."  Therefore, the jury reasonably could have found the Defendant guilty of Count 3.

> ### 4. *A Rational Jury Could Have Found That C.T. Was the Female in the Images Underlying All Counts of Conviction.*

The Defendant next argues that C.T. was not sufficiently identified as the person depicted in the pictures and videos introduced at trial.  However, the jury got to see C.T. when she testified at trial.  Further, C.T. identified herself in multiple photographs and still-frames of the video.  The Defendant also admitted in his testimony that he had taken sexually graphic pictures and videos of C.T.  Therefore, the Government presented substantial evidence, upon which a rational trier of fact could have identified C.T. as the young girl in each and every photo and video.

> ### 5. *A Rational Jury Could Have Found the Defendant Guilty of the Counts Where C.T. Testified to Taking the Photographs.*

The Defendant last argues that no rational trier of fact could have convicted the Defendant on Counts 8, 10, and 12 because C.T. testified that she took the photos and taking the photos, at least sometimes, was her idea. [2]  First, as this Court has noted, credibility issues are resolved in favor of the jury.  The jury could have rationally found C.T. not credible, especially considering the Defendant's influence over her.  In fact, at trial, this Court noted, outside the presence of the jury, that it found C.T.'s testimony to be highly questionable and seemingly influenced by the Defendant. *See* Trial Transcript (d/e 149) at 603 ("The Court: And I state for the record outside the presence of the jury that I found C.T.'s testimony to be highly suspicious and inauthentic.").  Further, at least one juror saw the Defendant mouthing words to C.T. while she was on the witness stand, providing further evidence of his manipulation of the minor.

Second, the jury did not have to find that the Defendant took all of the images in order to find the Defendant guilty of sexual exploitation of a minor.  The statute prohibits not just "us[ing]" a

2 The Defendant appears to have mistakenly cited Count 11 instead of 12 in his motion as the jury acquitted the Defendant on Count 11.

minor but also "persuad[ing], induc[ing], entic[ing], or coerc[ing]" a minor to engage in sexual activity for the purpose of making a visual depiction.  The Government presented significant evidence, including expert testimony, that the Defendant had groomed C.T. to become comfortable participating in the creation of pornography. Therefore, a rational trier of fact could have found that  the Defendant "persuade[d], induce[d], entice[d], or coerce[d]" the victim to take the pictures in Counts 8, 10, and 12 and, therefore, found the Defendant guilty of those Counts even if the trier of fact believed that C.T. took the photos and that C.T. believed that it was her idea to take the photos.

For the foregoing reasons, this Court finds that a rational trier of fact could have found that the Government proved every element of the offense beyond a reasonable doubt on each of the seventeen counts of conviction.  Therefore, the Defendant's Amended Motion for Acquittal is DENIED.

## B. **The Defendant's Amended Motion for New Trial is Denied.**

A Rule 33 motion "is not to be granted lightly."  *U.S. v. Santos*,

20 F.3d 280, 285 (7th Cir. 1994) (internal quotations omitted).
"Fed.R.Crim.P. 33 states that a trial court may grant a new trial...in
the interests of justice."  *U.S. v. Reed*, 986 F.2d 191, 192 (7th Cir.
1993) (internal quotations omitted).  "[C]ourts have interpreted Rule
33 to require a new trial in a variety of situations in which trial
errors or omissions have jeopardized the defendant's substantial
rights."  *Id.*

The Defendant raises ten separate alleged pretrial and trial
errors in support of his motion for a new trial: (1) the Court's denial
of the Defendant's Motion to Suppress; (2) the Court's denial of the
Defendant's Motion for Leave to File a Supplemental Motion to
Suppress; (3) the Court's denial of the Defendant's Motion to Sever;
(4) the Court's denial of the Defendant's request that the jury be
instructed as to an affirmative defense of mistake of age; (5) the
Court's qualification of Ellen Price and Michael Mitchell as experts;
(6) the Court's exclusion of Defendant's exhibits and witnesses; (7)
the Court's denial of Defendant's request that certain jurors be
struck for cause; (8) two instances where the Court did not strike
testimony where the Defendant alleges that the Government's

expert, Ellen Price, gave opinions as to ultimate issues at trial; (9)

the Court's granting of the Government's Motion to Introduce F.R.E.

414 Evidence; and (10) the Court's denial of the Defendant's

objections to four of the Government's proposed jury instruction.

For the forthcoming reasons, the Court finds that none of these

alleged errors creates cause to grant the Defendant a new trial in

the "interest of justice."

   1. *The Court Did Not Err By Denying the Defendant's Motion to Suppress.*

The Defendant first contends that the Court erred in denying

his motion to suppress.  The Court adopts the facts and findings of

its Opinion denying the Defendant's original motion and holds that:

(1) the search warrant for the Defendant's apartment was supported

by probable cause, based on the affidavit of Officer Wangard; (2)

alternatively, the search of the Defendant's apartment was legal

under the good faith exception to the exclusionary rule; (3) the on-

site search of the Defendant's electronic devices, pursuant to the

search warrant was supported by probable cause, based on the

affidavit of Officer Wangard; (4) alternatively, the on-site search of

the Defendant was justified by exigent circumstances; and (5)

regardless of the legality of the on-site search of the Defendant's

electronic devices, the photographs and videos discovered fall under

the independent source and the inevitable discovery doctrines.  *See*

Opinion (d/e 77). Therefore, the Court finds that it did not err in

denying the Defendant's motion.

> ## 2. The Court Did Not Err By Denying the Defendant's Motion for Leave to File a Supplemental Motion to Suppress.

The Defendant next argues that the Court erred by not

allowing the Defendant to file a supplemental motion to suppress.

The Court adopts the facts and findings of its Order denying the

Defendant's original motion and holds that, considering the low

probability of success of the Defendant's arguments, permitting the

Defendant to file an additional motion to suppress would have been

"an imprudent use of judicial resources."  *See* Order (d/e 53) at 2.

Further, the Defendant desired to file a supplemental motion

because the Defendant claims that he discovered, for the first time,

at the evidentiary hearing, that Officer Wangard had made

misrepresentations in his warrant affidavit.  However, in the

Defendant's Closing Argument in support of his Motion to
Suppress, the Defendant raised that issue.  *See* Closing Argument
(d/e 57) at 9-11.  Accordingly, the Court specifically addressed the
issue in its Opinion denying the Defendant's motion to suppress.
*See* Opinion (d/e 77) at 9-19.  Therefore, the Court finds that it did
not err in denying the Defendant's motion.

> ### 3. *The Court Did Not Err By Denying the Defendant's Motion to Sever.*

The Defendant next argues that the Court erred by denying
the Defendant's Motion to Sever the "Penalties for Registered Sex
Offender" count.  The Defendant argues that the Government did
not need not include this count because Defendant is facing
mandatory life, so the Penalties for Registered Sex Offender count
has no impact on the Defendant's sentence.  The Defendant
suggests the Government included the count for the sole purpose of
admitting otherwise inadmissible evidence at trial, *i.e.* that the
Defendant was a registered sex offender.  The Defendant's argument
is moot because of the Court's finding *infra* Part.II.C. that the
Defendant does not qualify for mandatory life in prison.  Further,

the Court adopts the facts and findings of its previous opinion denying the Defendant's motion and holds that the Defendant did not satisfy his burden of establishing that he could not "obtain a fair trial" without a severance.  *See* Opinion (d/e 117) at 18-23. Therefore, the Court finds that it did not err in denying the motion.

### 4. The Court Did Not Err By Instructing the Jury that Mistake of Age Is Not an Affirmative Defense to Violation of §2251.

The Defendant next argues that the Court erred by denying the Defendant's request that the Court instruct the jury as to an affirmative defense of mistake of age.  The Defendant reiterates his argument from his response to the Government's Motion in Limine to bar evidence concerning the Defendant's knowledge of C.T.'s age. Therefore, the Court adopts the facts and findings of its previous opinion granting the Government's Motion in Limine and holds that, under *United States v. Fletcher*, 634 F.3d 395 (7th Cir. 2011), an affirmative defense of mistake of age is not available to a defendant charged with sexual exploitation of a minor.  Therefore, the Court finds that it did not err in granting the motion.  *See* Opinion (d/e 117) at 25-27.

### 5. *The Court Did Not Err By Qualifying the Government's Expert Witnesses.*

The Defendant next argues that the Court erred by qualifying Ellen Price and Michael Mitchell as experts.  Again, the Defendant restates his arguments from a previous motion on the same issue. *See* Def. Motion in Limine to Bar Qualification of Experts and Expert Testimony (d/e 101).  The Court adopts the facts and findings of its previous opinion denying the Defendant's motion and, holds that Ellen Price and Michael Mitchell qualify as experts. Therefore, the Court finds that it did not err in denying the Defendants motion in limine.  *See* Opinion (d/e 137) at 17-23.

### 6. *The Court Did Not Err By Excluding the Defendant's Exhibits and Witnesses.*

The Defendant next argues that the Court erred by excluding the Defendant's exhibits and witnesses prior to trial.  The Defendant's argument mirrors his argument for acquittal based on *Palominos-Coronado*, 805 F.3d 127 (holding that the Government did not present sufficient evidence to support a guilty verdict in a § 2251 case because the Government did not provide evidence to prove that the defendant intended to create a visual depiction of the

sexual conduct).  The Defendant claims that he was prevented from presenting significant evidence to prove that the Defendant and C.T. shared a "loving relationship."  The Defendant claims that such evidence would have rebutted evidence that the Government presented to prove the "for the purpose of" element of sexual exploitation of a minor.  As previously restated by this Court *supra* Part II.A.1., and fully addressed by this Court in its prior opinion on the Government's Motion in Limine, under the Seventh Circuit's holding in *Fletcher*, the "'purpose' element of § 2251 [is] proven by the mere fact that the Defendant personally took a photo of, took a recording of, or engaged in the recorded act along with a minor engaging sexually explicit conduct.  *See* Opinion (d/e 137) at 10-16. Therefore, the Court finds that it did not err in granting the Government's Motions in Limine to Exclude the Defendant's Exhibits and Witnesses.

Assuming, *arguendo*, that *Palominos-Coronado* binds this Court, the Court finds that the Defendant was not prejudiced by the exclusion of his evidence and exhibits.  The Defendant was permitted to question and *did* question C.T. about her purported

"loving relationship" with the Defendant.  *See* C.T. Cross, Trial Transcript (d/e 149) at 571 (*e.g.* "During the time that you were with Marcus, how did he treat you?...Did he ask you to marry him?").  Further, the Defendant personally testified on the issue of his and C.T.'s relationship.  *See* Fifer Direct, Trial Transcript (d/e 150) at 682 (*e.g.* "What was your relationship like with C.T.?...[Def]: "My sole purpose of making those videos and pictures was—For memories.  For me and C.T.'s relationship....").

Moreover, the Defendant admits that, even under *Palominos-Coronado*, the Government does not have to prove that creating visual depictions was the Defendant's "sole purpose."  Therefore, allowing the Defendant to pile on evidence to support a single premise (that he and C.T. shared a loving relationship) would not rebut the Government's evidence that the Defendant intended to create visual depictions of the sexual conduct.    The Fourth Circuit, in *Palominos-Coronado,* does not say that the Government must prove that the defendant's intent to create a visual depiction of the sexual conduct dominated over any other purpose that the Defendant had for producing the images but, rather, only that the

Page 32 of 64

Government is required to present evidence sufficient to prove that the Defendant did, in fact, intend to create visual depictions. *See generally,* 805 F.3d 127.

In this case, the Government presented sufficient evidence for a rational trier of fact to find that the Defendant intended to create a visual depiction of his and C.T.'s sexual conduct. Even if the Defendant were to present *more* evidence that an additional purpose for producing a visual depiction of the conduct existed, such evidence would not serve to rebut the Government's evidence that the Defendant had the specific intent to create a visual depiction of the sexual conduct. Therefore, even if the Court erred in barring the Defendant's exhibits and witnesses, the "interests of justice" do not require the Court to grant the Defendant a new trial.

The Defendant additionally argues that, because the Government was able to introduce "approximately 80 photographs" taken by the Defendant and C.T. that were not pornographic, the Defendant should have been able to admit his evidence. Def. Amended Mot. for New Trial (d/e 161-1) at 9. However, this Court finds that the Government's introduction of non-pornographic

photographs of the Defendant and C.T. actually supports any argument by the Defendant that he and C.T. had a relationship that was not only sexual  and, therefore, if anything, the admission of those photographs renders the Defendant's evidence cumulative.

Further, the Court finds that, because the Defendant was able to present evidence to support his argument, the exclusion of the Defendant's exhibits and witnesses was merited under F.R.E. 403. The Defendant's additional evidence included letters written by C.T., the witness whom he questioned, and second-hand information about the Defendant and C.T.'s relationship from C.T.'s family.  First, the evidence was cumulative of the evidence already discussed by the Court and, therefore, the Court has an interest to exclude such evidence to avoid "undue delay, wasting time, [and] needlessly presenting cumulative evidence."  F.R.E. 403.  *See U.S. v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000) ("Since [the evidence] added very little to the probative force of the other evidence in the case, [the Court] properly exercised [its] discretion when [it] excluded [the evidence] as cumulative.").

Second, if the Court allowed the Defendant to bring a wealth of

Page 34 of 64

evidence of his "loving relationship" with C.T., the jury might have been misled or confused into believing that the Defendant could rebut the Government's evidence of intent by bringing a larger amount of evidence supporting an alternative purpose.  Considering these interests, the Court finds that the probative value of such evidence was "substantially outweighed by a danger of...confusing the issues, misleading the jury, undue delay, wasting time [and] needlessly presenting cumulative evidence," in violation of F.R.E. 403.  Therefore, excluding the additional evidence was within the Court's discretion.  *See Miles*, 207 F.3d at 993 (holding that the Court has the discretion to bar a defendant from introducing documents that "would have served no purpose other than to repeat the testimony given by [the witness]").

The Defendant also argues that the Court erred by preventing the Defendant from examining C.T. regarding certain photos in the presence of the jury.  However, the Court did not prevent the Defendant from examining C.T.  After C.T. testified that she may have personally taken some of the allegedly pornographic images, the Defendant indicated that he would have to question C.T. about

the images to see which photos she took.  *See* Trial Transcript (d/e 149) at 580-582.  The Government objected to the Defendant's line of questioning.  *See id.*  The Court overruled the Government's objection and advised the Government that the Court would allow the Defendant to question C.T. unless the parties could come to a stipulation that rendered the testimony moot.  *See id.*  The parties eventually agreed to bring C.T. back into the courtroom outside the presence of the jury and then stipulate to her testimony.  *See id.* at 582-609.  The Defendant agreed to this procedure and later agreed to the stipulation.  *See id.*  Therefore, he was not deprived of any constitutional right.

### 7. The Court Did Not Err By Denying the Defendant's Motions to Strike a Juror for Cause.

The Defendant next argues that the Court erred by denying his request to strike a juror ("Mr. T") for cause.  The Defendant argues that he was denied a fair and impartial trial because he had to use a peremptory strike to remove Mr. T and, therefore, could not use an additional peremptory strike later on in jury selection.  During *voir dire*, Mr. T twice expressed concern about his ability to be

impartial during a child pornography case: once when asked if there was anything about the nature of the case that caused him to think he could not be fair and impartial and once when asked if he would want himself as a juror in the case.  *See* Jury Selection, Trial Transcript (d/e 145), p. 63-66, 91-94.  However, in both instances, after a discussion, Mr. T satisfied this Court that he could be impartial. *See id.* at 64 (Government: "Would you follow the Court's instructions?" Mr. T: "I mean absolutely.  I'm an honest person, I'm logical, you know, I think I can, but I'm just saying."); *see also id.* at 92 (Court: "Clearly this case bothers you.  Will you be able to follow my instructions, even if you disagree with what I tell you the instructions are...[a]nd can you base your decision on the facts that are brought forth in this case?"  Mr. T: "Yeah.").  The court denied the Defendant's motion to strike for cause in both instances, reasoning that the case is likely to be difficult for all of the jurors and that Mr. T's hesitance reflected honest consideration of the task at hand, which enhanced his credibility.  *See id.* at 65-66.  For the same reasons, the Court now finds that it did not err in denying the Defendant's motions to strike for cause.

Assuming, *arguendo*, that the Court did err in denying the Defendant's motions to strike for cause, the Court finds that the Defendant was not denied his right to a fair trial and an impartial jury based on the loss of a peremptory challenge. The Supreme Court has held that a defendant does not have a constitutional right to his peremptory challenges. *See U.S. v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) ("[W]e have long recognized, as well, that [peremptory] challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."). The Defendant had the opportunity to allow Mr. T to sit for the trial and then later appeal the impartiality of the jury. Therefore, the Defendant did not lose his peremptory strike but chose to exercise the strike against Mr. T. *See id.* at 315-16 ("In choosing to remove [the juror] rather than taking his chances on appeal, [the defendant] did not lose a preemptory challenge."). As the Supreme Court has advised, "[a] hard choice is not the same as no choice." *Id.* at 315.

In *United States v. Polichemi*, the Seventh Circuit followed the guidance of *Martinez-Salazar*. 219 F.3d 698. The Seventh Circuit

Page 38 of 64

cited three additional reasons that the loss of a peremptory strike did not merit a new trial, all of which are applicable to the Defendant's case: (1) the Defendant did not request additional peremptory challenges as he is permitted to do by Fed.R.Crim.P. 24(b); (2) the Defendant's lawyer affirmatively told the District Judge that she had no objections to the panel of twelve; and (3) the Defendant does not allege that the trial court "deliberately misapplied the law in order to force the defendant[ ] to use a peremptory challenge."  *Id.* at 705; *see also* Jury Selection, Trial Transcript (d/e 145) at 220 ("Your honor, the defense accepts the panel of 12.").  Therefore, even if the Court erred in denying the Defendant's motions to strike Mr. T for cause, the Court finds that the "interests of justice" do not require granting the Defendant a new trial.

      8. *The Court Did Not Err By Denying the Defendant's Motions to Strike Parts of the Government's Expert Testimony.*

The Defendant next argues that the Court erred by not striking testimony of the Government's expert witness Ellen Price, which the Defendant alleges constituted an opinion as to an

ultimate issue for jury determination.  The Defendant argues that Investigator Price offered an opinion as to an ultimate issue for jury determination in two instances: (1) when she testified that C.T.'s pose was "unnatural" in one of the alleged images of child pornography; and (2) when she used the term "child pornography" to generally refer to the alleged images of child pornography.

Investigator Price was qualified as an expert for the Government based on her vast experience enacting forensic investigations of electronic devices in child pornography cases. Investigator Price was also a fact witness because she conducted the forensic investigation of the Defendant's electronic devices in the present case.  Generally, experts cannot testify as to an ultimate issue regarding a criminal defendant's "mental state or condition that constitutes an element of the crime charged or of a defense." *See* F.R.E. 704(b).  The Defendant does not argue that Investigator Price testified to the mental state of the Defendant.

On the other hand, the Defendant argues that Investigator Price's testimony was barred by this Court's ruling on the Defendant's Motion in Limine to Bar Government Witnesses from

Testifying as to Ultimate Issue for Jury Determination.  *See* (d/e
109).  The Court granted the Defendant's Motion in Limine to bar
the Government's witnesses from testifying to ultimate issues
without objection from the Government in this case.  *See* Opinion
(d/e 137) at 9-10.  In the Defendant's motion, he requested that
testimony as to the following ultimate issues be barred by the
Court: (1) whether an image depicted sexually explicit conduct, (2)
whether an image was lascivious, and (3) whether an image
constituted child pornography.  *See* Def. Motion in Limine to Bar
Government Witnesses from Testifying as to Ultimate Issues for
Jury Determination (d/e 109) at 2.  The Court finds that
Investigator Price did not testify as to any of the ultimate issues
barred by the Court.

In the first instance, the Government asked Investigator Price
why one of the alleged images of child pornography was relevant to
her investigation.  *See* Price Direct, Trial Transcript (d/e 149) at
491.  Investigator Price responded that she found the image
relevant to her investigation because of "the focus" of the picture
and "the pose" of the young girl.  *See id.*  The Government then

asked Investigator Price why the pose was important, to which Investigator Price responded that "[i]t's not a natural pose for a child when they're getting their picture taken." *See id.* The Defendant objected, arguing that the witness made a legal conclusion. The Court overruled the objection because the testimony was not an opinion on an ultimate issue but the Court did generally admonish the Government to avoid legal conclusions, as the witness was "dangerously close." *Id.* at 92-93. The testimony elicited in this instance constituted not a *legal* conclusion but a determination that Investigator Price made within the context of her investigation. Further, although whether the pose is unnatural is a factor for the jury's consideration when ruling on whether an image is lewd and lascivious, whether a pose is "unnatural" was not an "ultimate issue" barred by this Court when it granted the Defendant's Motion in Limine.

The second instance occurred during the Defendant's cross-examination of Investigator Price. *Id.* at 539. The Defendant asked Investigator Price whether "images" were found on any other of the Defendant's electronic devices. *Id.* at 539. Investigator Price

answered "No."  *Id.*  The Defendant then posed a clarifying question

seeking to elicit testimony that Investigator Price did not find any

allegedly pornographic images on devices seized from the Defendant

aside from the three devices that were already discussed, asking

Investigator Price, "[s]o it was limited to just the three devices we've

discussed; correct?"  *Id.*  Investigator Price responded that "[c]hild

pornography was only found on the three devices; yes.  *Id.* at 539-

40.  The Defendant objected and the Court overruled the objection.

The Court does not find that Investigator Price testified as to the

ultimate issue of whether any of the charged images were "child

pornography."  The Defendant's line of questioning was vague, as

Defense counsel was referring to the alleged images of child

pornography simply as "images."  In response, Investigator Price

was trying to clarify that she was not answering as to whether any

images at all were found on the other electronic devices but as to

whether any of the allegedly pornographic images were found.

Investigator Price's intent was made even more clear when she later

made another attempt to clarify her testimony.  *See id.* at 540 ("My

exams are only concerned with the images and videos that are—

that can be charged criminally….  I don't document any other videos and images that I locate.  So there may have had other videos and images…").

The Court finds that although Investigator Price's language was, at first, imprecise, her attempts at clarification would not confuse a rational trier of fact into thinking that she was offering a legal conclusion as to whether a particular image or set of images was child pornography.  Therefore, the Court did not err in denying Defendant's motion to strike the testimony of Investigator Price in these two instances.

9. *The Court Did Not Err By Allowing the Government to Present Rule 414 Evidence.*

The Defendant next argues that the Court erred by allowing the Government to introduce evidence of the Defendant's prior conviction for Aggravated Criminal Sexual Abuse during cross-examination of the Defendant.  In support of his argument, the Defendant cites the Court's original Opinion (d/e 117), in which the Court denied the Government's first motion to introduce the same evidence.  Accordingly, the Defendant's argument echoes this

Court's reasoning from its original Opinion, arguing that the prior

conviction is too dissimilar to the offensive conduct in this case to

have significant probative value, and, therefore, the evidence should

be excluded under F.R.E. 403 because the probative value is

substantially outweighed by prejudice to the Defendant.  However,

in the Court's Opinion later allowing the Rule 414 evidence, the

Court fully addressed why the evidence was now admissible.  *See*

Opinion (d/e 138).  Therefore, the Court adopts the facts and

findings of its Opinion granting the Government's motion to present

Rule 414 evidence and holds that: (1) under *United States v.*

*Russell*, 662 F.3d 831 (7th Cir. 2011), the Court  is "permitted to

admit previously denied" Rule 414 evidence when "testimony and

arguments presented at trial" give the evidence greater probative

value; and (2) the Defendant's testimony that he had innocent

intentions in creating the alleged child pornography gave

heightened probative value to evidence of the Defendant's prior

conviction for sexually abusing a different minor victim for the

purpose of his sexual arousal and, therefore, rendered the evidence

admissible under F.R.E. 403.  Therefore, the Court did not err by

allowing the evidence.  *See id.*

>    10.    *The Court Did Not Err By Giving Government's Proposed Instructions 17A, 39, 45, or 51 to the Jury.*

The Defendant last argues that the Court erred by giving the Government's proposed instructions 17A, 39, 45, and 51 to the jury.  The Court disagrees.

The Defendant argues that instruction 17A "buttress[ed]" the Government's witnesses by including the title and rank of the police officers that were qualified as experts where the pattern instruction indicated only "witness name," rather than "witness name and title."  *See* Def. Amended Mot. for New Trial (d/e 161) at 8.  The Defendant made the same argument prior to trial.  *See* Def. Objections to Proposed Jury Instructions (d/e 107) at 3-4. Although, the Committee Comments to Pattern Instruction 3.13 advise that there is a "danger that an expert's testimony will be given undue weight," this Court does not find that including the titles of police officers increases that danger.  *See* Committee Comment, Seventh Circuit Criminal Pattern Instruction 3.13.  The jury was aware of the officers' ranks.  In fact, the Defendant

analyzed the officers' positions and qualifications at great length in *voir dire*. Further, neither the Defendant nor this Court has identified case law to support the Defendant's contention that police officers' titles should be excluded from the instruction.

The Defendant further argues that the Court erred by allowing the instruction to read that Ms. Price was an expert "as to the extraction of 'child pornography.'" However; the "extraction of child pornography" is an apt description of the subject of Ms. Price's expert testimony. Investigator Price has extensive experience conducting forensic examinations and extractions from electronic devices, specifically in child pornography cases, and the Government's examination of Investigator Price was specific to her work in child pornography cases. Further, Seventh Circuit Pattern Instruction 3.13 advises the Court to "specify the subject(s), if possible." Therefore, the Court appropriately allowed the Government to specifically state the subject of Investigator Price's testimony in the jury instruction.

The Defendant states that he objected to instruction 39 but makes no further argument. Instruction 39 states that the

Government is "not required to prove the Defendant knew Minor Victim 1 was under the age of eighteen." *See* Proposed Jury Instructions—Ruled on by Court (d/e 129), Gov. Proposed 39.  Per the Court's earlier discussion, *supra* Part.II.B.4., the Court finds that instruction 39 is a proper statement of law.  Further, during trial, a juror submitted the question to the Court, "How old did C.T. tell [the Defendant] she was?" *See* Jury Questions from Trial (d/e 124), Jury 08.  Therefore, the Court finds that it was necessary to instruct the jury on the law concerning the Defendant's knowledge of C.T.'s age.  Further, the Defendant agreed to the reading of instruction 39 in response to Jury Question 08 during trial.  *See* Trial Transcript (d/e 149) at 587 ("The Court: ...This is question 8...Mr. Childress: That's the age [instruction] I would ask for....Ms. Mayo: If you ruled on it as being given, that's fine.").  Therefore, the Court properly gave the instruction to the jury.

The Defendant states that the Court gave jury instruction 45, regarding consent, but makes no further argument.  Instruction 45 advises the jury that consent is not a defense in the charged crimes. The Defendant did not object to the Government's Motion in Limine

to Bar Evidence of Consent, so the Court finds that the Defendant
does not contest the correctness of the law in the instruction.  *See*
Opinion (d/e 137) at 9.  Further, the Court  finds that the
instruction is a correct statement of law.  *See United States v.
Rogers*, 587 F.3d 816, 820 (7th Cir. 2009) ("Minors lack the
capacity to consent, and so sexual contact with a minor is always
without consent.").  Further, during trial, a juror submitted the
question to the Court, "[w]as [C.T.] forced to do anything or was she
a willing participant?"  *See* Jury Questions from Trial (d/e 124),
Jury 07.  Therefore, the Court finds that it was necessary to
instruct the jury on the issue of consent.  Further, the Defendant
agreed to the reading of instruction 45 in response to Jury Question
07 during trial.  *See id.* at 586-87 ("The Court: Jury Number 7?  Mr.
Childress: I think we should read the consent instruction, Your
Honor.  The Court:  Ms. Mayo?  Ms. Mayo:  I think that's fine.").
Therefore, the Court properly gave the instruction to the jury.

The Defendant states that he asked that instruction 51 not be
given per the Committee Comments and further argues that
instructing the jury not to consider the sentence "may have

Page 49 of 64

diminished for the jury the weight of the task before them and the

Government's burden to prove its case."  The Defendant quotes only

a portion of the Committee Comment.  The relevant part of the

Comment to Pattern Instruction 4.08 reads:

> "This instruction is optional.  It is commonly requested by the
> government in certain districts within the Circuit and is given by
> some, but not all, judges.  The Committee has included it so that
> there is some standardization.  The most common argument
> against giving an instruction in the way it is now commonly given,
> *i.e.*, "you should not consider the issue of punishment," is that it
> tends to denigrate the burden of proof and undermine the
> seriousness of the jury's task.  The rewording of the commonly-
> given instruction that is proposed here will go at least part of the
> way toward eliminating the risk that this will occur."

The Committee is not putting forth its own view, but rather is

referring to an argument made against this instruction in its *prior*

form.  The Committee specifically addressed the Defendant's

argument by amending the instruction to read "the possible

punishment" rather than "the punishment."  Further, the

Committee's inclusion of the instruction strongly suggests that

courts are permitted to give the instruction.

Although the parties did not discuss the sentence that the

Defendant was facing at trial, the jury knew the Defendant was

charged with 24 separate offenses.  Accordingly, the jury could

Page 50 of 64

reasonably assume that if the Defendant was found guilty of all 24 counts, he would be facing a substantial sentence.  Therefore, it was reasonable to instruct the jury to focus their consideration on the elements of the offenses and not the penalty.

This Court finds that none of the pretrial or trial rulings cited by the Defendant "jeopardized the defendant's substantial rights." Accordingly, the Court does not find that it is "in the interests of justice" to grant the Defendant a new trial.  Therefore, the Defendant's Amended Motion for a New Trial is denied.

### C. <u>The Defendant Does Not Qualify for Mandatory Life Imprisonment Under 18 U.S.C. § 3559(e).</u>

The parties dispute whether the Defendant's prior Illinois state conviction for aggravated criminal sexual abuse subjects the Defendant to mandatory life imprisonment under 18 U.S.C. § 3559(e).

"A person convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed."  18 U.S.C. § 3559(e)(1).  A prior

sex conviction includes a State sex offense punishable by more than one year that "consists of conduct that would be a Federal sex offense" if federal jurisdiction had existed.  18 U.S.C. § 3559(e)(2)(B).  The statute defines a minor as one who has not attained the age of 17 years.  18 U.S.C. § 3559(e)(2)(D).

The Defendant's State conviction for aggravated criminal sexual abuse involved a minor victim and was an offense punishable by more than one year.  See 720 ILCS 5/12-16(g) (West 2008) (providing that aggravated criminal sexual abuse is a Class 2 felony); 730 ILCS 5/5-8-1(a)(5) (West 2008) (providing for a sentence of 3 to 7 years for a Class 2 felony).  Therefore, all that is left for the Court to determine is whether the Defendant's prior state court conviction "consists of conduct that would be a Federal sex offense." 18 U.S.C. § 3559(e)(2)(B).

The method for making that determination under Section 3559 (e) is not clear.  For some sentencing enhancement statutes, courts have applied what is called the categorical approach.  For example, the United States Supreme Court in *Taylor v. United States,* 495 U.S. 575 (1990) adopted the categorical approach to

determine whether a defendant's prior conviction for burglary
qualified as the Armed Career Criminal Act's enumerated offense of
burglary.  *See* 18 U.S.C. § 924(e)(1) (providing for an enhanced
penalty for individuals with three previous convictions for a violent
felony or a serious drug offense or both); 18 U.S.C. § 924(e)(2)(B)
(defining "violent felony" to include any felony that "has as an
element the use, attempted use, or threatened use of physical force
against the person of another" and a felon that "is burglary, arson,
or extortion, or involves use of explosives").  Under the categorical
approach, courts compare the statute forming the basis of the
defendant's prior conviction with the applicable generic offense in
the Federal sentencing statute.  *Taylor*, 495 U.S. at 600.

    In some instances, the statute forming the basis of the
underlying conviction is divisible.  That is, the "statute sets out one
or more elements of the offense in the alternative" and one
alternative matches the elements in the generic offense while
another alternative does not.  *Descamps v. United States,* 133 S. Ct.
2276, 2281-82 (2013) (finding that the modified categorical
approach could not be used when the defendant was convicted

Page 53 of 64

pursuant to a state burglary statute that criminalized a "broader swath of conduct than the relevant generic offense" because that "would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an [Armed Career Criminal Act] predicate [offense] even though the elements of the crime fail to satisfy our categorical test"). Under the modified categorical approach, a court faced with a divisible statute can look at a "limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. The court then compares the elements of the crime of conviction with the elements of the generic crime. *Id.* The modified categorical approach is only appropriate where a statute is divisible into qualifying and non-qualifying offenses and does not apply to a crime that has a single, indivisible set of elements. *Id.* (noting that the only application of the modified categorical approach that the Supreme Court has allowed is to help implement the categorical approach when a defendant is convicted of violating a divisible statute).

As a result, whether this Court should apply the categorical approach to Section 3559(e) is not clear.  *See United States v. Daranda*, 405 F. App'x 834, 839 (5th Cir. Dec. 20, 2010) (noting that "[n]o circuit has squarely decided how courts should determine whether a given state conviction is a prior conviction under § 3559(e)).  This Court recognizes that Section 3559(e) is written differently than the Armed Career Criminal Act statute, which referred to predicate offenses in terms of prior convictions and elements.  *See Shepard v. United States,* 544 U.S. 13, 19 (2005) (noting that "language imposing the categorical approach . . . refers to predicate offenses in terms not of prior conduct but of prior convictions and the elements of crimes) (quotations and citations omitted).  Section 3559(e) seems to invite inquiry into the facts of the underlying conviction by defining a prior sex conviction to include a State sex offense that "consists of *conduct* that would be a Federal sex offense."  18 U.S.C. § 3559(e)(2)(B) (emphasis added).  While some courts have applied the modified categorical approach to conduct a factual inquiry into the conduct of the State sex offense, these cases predate *Descamps.  See United States v.*

Page 55 of 64

*Pavulak,* 700 F.3d 651 (3d Cir. 2012); *United States v. Rood,* 679 F.3d 95 (2d Cir. 2012).  In addition, such a factual inquiry by this Court would likely violate *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").  And even the Government does not ask this Court to make a factual inquiry.  *See* Gov't Position (d/e 172) at 2 ("to the extent this Court properly avoids fact finding . . ."); *Id.* at 3 ("this Court need not engage in fact finding to determine whether [Defendant's] conduct  . . . would be a Federal sex offense.").

Given the uncertainty, the fact that some courts have applied the categorical approach to Section 3559(e), and this Court's desire to avoid fact-finding, the Court will apply the categorical approach. *See Rood,* 679 F.3d at 98 (applying the categorical approach and modified categorical approach to determine whether a State sex offense constituted a predicate offense under Section 3559(e);[3] *United States v. McElroy,* No. 3:12-cr-00542-HZ, 2014 WL 1877409,

---

3 *But see United States v. Barker*, 723 F.3d 315, 321 (2d Cir. 2013) (noting that the *Rood* court incorrectly applied the modified categorical approach).

at *2 (D. Or. May 9, 2014) (applying the categorical approach to determine whether the defendant was subject to an enhanced penalty under 18 U.S.C. § 3559(e)(1)).

Applying the categorical approach, the Court finds that Defendant's prior Illinois state conviction for aggravated criminal sexual abuse does not subject Defendant to mandatory life imprisonment because that conviction was not conduct that would be a Federal sex offense.

For purposes of Section 3559(e), a Federal sex offense means one of several enumerated offenses listed in 18 U.S.C. § 3559(e)(2)(A).  Because the parties agree that the only possible relevant enumerated Federal sex offense is abusive sexual contact, 18 U.S.C § 2244(a)(1), the Court will limit its analysis to that offense.

A person violates Section 2244(a)(1) if he knowingly engages in or causes sexual contact with or by another person, if to do so would violate Section 2241(a) or Section 2241(b) had the contact been a sexual act.  18 U.S.C. § 2244(a)(1).  The parties limit their argument to Section 2241(a), which, substituting "sexual contact"

for "sexual act," prohibits knowingly causing another person to engage in sexual contact "by using force against that person" or "by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping."  18 U.S.C. § 2241(a).  Sexual contact is defined as:

> The intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246.

Under the categorical approach, the Court compares the elements of Defendant's State sex conviction to the elements of Section 2241(a)(1) (substituting "sexual conduct" for "sexual act"). The Court must decide whether Defendant's prior state conviction for aggravated criminal sexual abuse consists of conduct that would constitute knowingly causing another person to engage in sexual contact by using force or threatening or placing that person in fear that any other person will be subjected to death, serious bodily injury, or kidnapping.

In 2008, Defendant was charged in Champaign County, Illinois with aggravated criminal sexual abuse in violation of 720

ILCS 5/12-16(c)(1) (West 2008).4   Section 12-16(c)(1) provided, in

relevant part, as follows:

> (c)  The accused commits aggravated criminal sexual
> abuse if:
>
> (1) the accused was 17 years of age or over and (i)
> commits an act of sexual conduct with a victim who was
> under 13 years of age when the act was committed; or (ii)
> commits an act of sexual conduct with a victim who was
> at least 13 years of age but under 17 years of age when
> the act was committed and the accused used force or
> threat of force to commit the act[.]

720 ILCS 5/12-16(c)(1) (West 2008); see also 720 ILCS 5/12-12(e)

(West 2008) (defining "sexual conduct" to include the intentional or

knowing touching or fondling of the breast of the victim or the

accused, either directly or through the clothing, for purposes of

sexual gratification or arousal of the victim or the accused).

The State statute contains alternative elements.  One of those

alternatives—sexual conduct with a victim at least 13 years of age

but under 17 years of age and the accused uses force or threat of

force—involves conduct that would arguably constitute the Federal

sex offense under Section 2241(a)(1) because it clearly has as an

element use of force or threat of use of force.  The other

---

4 This offense is now listed at 720 ILCS 5/11-1.60.

alternative—sexual conduct with a victim under 13 years of age—
does not involve conduct that would violate Section 2241 because it
does not require use of force or threat of force.

Because the statute is divisible, this Court can apply the
modified categorical approach to determine which of the statute's
alternative elements formed the basis of Defendant's prior
conviction. *See Descamps,* 133 S. Ct. at 2284. The charging
document in the Defendant's State case alleged that "said
defendant, who was 17 years of age or older, committed an act of
sexual conduct with [redacted], who was under 13 years of age
when the act was committed, in that the defendant knowingly
fondled the breasts of [redacted] for the purpose of the sexual
arousal of the defendant." *See* Def. Mot. to Continue Sentencing
(d/e 169), Attachment (d/e 169-1). The Information clearly shows
that the Defendant pleaded guilty to the alternative element of the
statute that does not involve conduct that would violate § 2241(a)(1)
because it does not require use of force.

The Government argues that the use of force is inherent in the
state statue, arguing that minors lack the capacity to consent and,

Page 60 of 64

therefore, sexual conduct with a minor is per se against that minor's will.  Gov't Position (d/e 172) at 4.  However, the proscribed age of consent in Illinois is generally 17.  *People v. Lloyd,* 987 N.E.2d 386, 393 (Ill. 2013).  The Government does not explain why the Illinois legislature would require use of force for victims who are at least 13 years of age but under 17 years of age if the lack of capacity to consent constitutes inherent use of force.  Moreover, Section 2241(a)(1) requires the actual use of force.  *See United States v. Cherry*, 938 F.2d 748, 754 (7th Cir. 1992) (noting that "[i]f actual force is used, the defendant is guilty of aggravated sexual abuse under 18 U.S.C. § 2241(a)(1)"); *United States v. Archdale,* 229 F.3d 861, 868 (9th Cir. 2000) (holding that § 2241(a)(1) requires actual use of force, meaning "use of such physical force as is sufficient to overcome, restrain, or injure a person.") (citations and quotations omitted).

The Government also asks the Court to examine the factual basis presented at the plea hearing.  During the plea hearing, the assistant state's attorney stated that the evidence at trial would have included the fact that the Defendant followed the 10-year-old

victim, approached her, and asked her if she wanted to spend the day with him.  *See* Def. Mot. to Continue Trial, Attachment (169-2) (169-3).  The assistant state's attorney also stated: "When she told him no, he grabbed her chest area through her clothes, thereby fondling her breasts, for the purpose of his own sexual arousal."  Id. at 169-3.  The Government argues that because Defendant stipulated that he "grabbed" the victim's breast, the State sex offense clearly satisfied the force requirement of Section 2241(a)(1).

The Court disagrees.  Under the modified categorical approach, the Court can consider the plea colloquy to determine which alternative of a divisible statute the defendant committed but cannot use the plea colloquy to determine how the defendant committed that crime.  *See United States v. Ker Yang,* 799 F.3d 750, 753 (7th Cir. 2015) (involving the Armed Career Criminal Act and noting that under "the modified categorical approach, the court may look to a limited selection of additional documents . . . when necessary to determine the elements of conviction—as opposed to the facts underlying that conviction") (internal quotations omitted).  Moreover, the Court cannot consider whether Defendant's conduct

Page 62 of 64

of grabbing the victim's breast constituted "use of force" without making a factual determination in violation of <u>Apprendi</u>.  As a result, the Court cannot find that the Defendant's prior conviction included the use of "force" as is required by 18 U.S.C. § 2241(a). Therefore, the Defendant does not qualify for an enhanced sentence under section 3559(e).

### III.  <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that the Defendant's Amended Motion for Acquittal (d/e 160) and the Defendant's Amended Motion for New Trial (d/e 161) are DENIED. The Defendant's Motion to Set Aside Verdict (d/e 140) and the Defendant's Motion for New Trial (d/e 142) are DENIED AS MOOT.

IT IS FURTHER ORDERED that, the Defendant's objection to the Third Revised Presentence Investigation Report is SUSTAINED. The Court finds that the Defendant does not qualify for "Mandatory life imprisonment for repeated sex offenses against children" under 18 U.S.C. § 3559(e).

IT IS SO ORDERED.

ENTER: May 18, 2016

FOR THE COURT:

<u>s/ Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE